*Greg K. Nakamura (Rodsil & Nakamura)* for respondents-appellants.

MELVIN M. NAKAMURA, NANCY S. NAKAMURA, YOSHIO KAMINAKA, and MURIEL R. KAMINAKA, Plaintiffs-Appellees, *v.* KALAPAKI ASSOCIATES, a Hawaii partnership, KALAPAKI PARTNERS, a foreign partnership, KALAPAKI DEVELOPMENT, INC., a Hawaii corporation, Defendants, and HAWAII ESCROW & TITLE, INC., a Hawaii corporation, Defendant/Third-Party Plaintiff-Appellant, *v.* STATE SAVINGS & LOAN ASSOCIATION, a Utah corporation, and CARLSMITH AND DWYER, a law corporation organized and existing under and by virtue of the laws of the State of Hawaii, Third-Party Defendants

NO. 10672

(CIVIL NO. 72041)

MAY 16, 1986

LUM, C.J., NAKAMURA, PADGETT, HAYASHI, JJ., AND INTERMEDIATE COURT OF APPEALS ASSOCIATE JUDGE HEEN, IN PLACE OF WAKATSUKI, J., DISQUALIFIED

## OPINION OF THE COURT BY PADGETT, J

Appellant, an escrow company, appeals from a summary judgment entered against it and made final pursuant to the provisions of HRCP 54(b). We affirm.

Kalapaki Associates was the developer of a condominium project located in Lihue, Kauai, and known as the "Kalapaki Villas Increment No. 1." In March of 1980, appellees Nakamura and Kaminaka entered into condominium reservation agreements, deposits, receipts and sales agreements with the developer. The Nakamuras deposited $14,150 and the Kaminakas $13,900 with appellant who was acting as escrow agent.

The escrow agreement, under which appellant was acting, provided in part as follows:

7 *Requirements Prior to Disbursement of Purchaser's Fund.* Escrow shall make no disbursements of purchasers' funds or proceeds from the sale of such apartments (including any payments made on loan commitments from lending institutions), except by way of refunds thereof as provided hereinbelow, until Escrow has received a single opinion letter from Seller's attorneys that assuming the purchasers have signed receipts for public reports and that no subsequent events occur which would give the purchasers the right to rescind, that the Reservation and Sales Agreements have "become effective" and that "the requirements of Sections 514A-39, 514A-63, 514A-64 and 514A-66" of the Hawaii Revised Statutes have been met as said phrases are used in Section 514A-65, Hawaii Revised Statutes.

\* \* \* \*

8. *Refunds to Purchasers; Return of Documents.* Subject to such deductions as may be provided in said Reservation and Sales Agreement and the escrow cancellation fee, purchaser shall be entitled to a return of his funds, and Escrow shall pay such funds to

such purchaser, without interest, promptly after request for return by the purchaser if one of the following has occurred:

(a) Escrow receives a written request from the Seller to return to the purchaser the funds of the purchaser then being held hereunder by Escrow; or

(b) Seller notifies Escrow in writing of the Seller's exercise of the option to rescind the Reservation and Sales Agreement pursuant to any right of rescission stated therein or otherwise available to the Seller; or

(c) The conditions provided for a refund under Sections 5[1]4A-63, 514A-64 or 514A-66 of the Horizontal Property Act (as amended on the date upon which the Reservation and Sales Agreement becomes binding and effective) have been met, and written notice thereof has been provided to the Seller.

\* \* \* \*

20. *Subordination.* This Agreement is, in all of its provisions, to be deemed and interpreted as supplementary and subject to the provisions of Chapter 514A, Hawaii Revised Statutes, as now or hereafter amended, and if any conflict should arise between the provisions of this Agreement and the provisions of said Chapter 514A, the provisions of the latter shall control.

On February 15, 1980, the Hawaii Real Estate Commission issued a Preliminary Horizontal Property Regime Public Report on the project.

The Reservation Agreements entered into between the developer, as seller, and the appellees, as purchasers, provided in part:

III. Purchase Price, Method of Payment, Additional Sums to be Paid, Purchase Agreement and Public Reports:

\* \* \* \*

D. Reservation and Purchase Agreement. \* \* \* provided, however, that in the event that this Agreement is executed before Final Public Report for the Project is issued, then pursuant to Article IV Section E.2, this Agreement shall constitute a "reservation" and shall not be a binding contract unless both Purchaser and Seller execute a separate confirmation letter after a Final Public Report for the Project is issued. PURCHASER ACKNOWLEDGES HAVING READ ARTICLE IV IN FULL.

\* \* \* \*

## ARTICLE IV—TERMS AND CONDITIONS

\* \* \* \*

## B. FINANCING AND PAYMENT.

1. Escrow Agreement. Seller had entered into an Escrow Agreement covering the deposit, receipt, collection and disbursement of all funds to be paid by Purchaser hereunder with the company named in Article III above (the "Escrow"), a copy of which is on file in Seller's office and available for inspection by Purchaser and Purchaser's mortgagee during reasonable business hours, which Escrow Agreement (as it may be amended from time to time) by this reference is incorporated herein and made a part hereof. All payments to be made hereunder shall be paid by Purchaser to Escrow pursuant to the Escrow Agreement. Purchaser agrees that Purchaser's funds paid into Escrow pursuant hereto may be disbursed by Escrow as provided in the Escrow Agreement and prior to the recordation of the Purchaser's apartment deed. Purchaser acknowledges that he has examined a copy of and does approve the terms of the Escrow Agreement and hereby accepts the terms and provisions thereof and assumes the benefits and obligations set forth therein. Purchaser hereby authorizes, requests and instructs Escrow to comply with the terms of the Escrow Agreement and to disburse all funds deposited in escrow under said Escrow Agreement in accordance with the provisions thereof.

\* \* \* \*

## E. BINDING EFFECT AND CANCELLATION OF AGREEMENT.

\* \* \* \*

2. Reservation Agreement Based on Preliminary Public Report.

(a) Notwithstanding any other provision of this Agreement to the contrary, it is expressly understood and agreed that if at the time of execution of this Agreement by the Purchaser and the Seller, a Final Public Report for the Project has not been issued by the Real Estate Commission of the State of Hawaii, this Agreement shall not be legally binding upon either the Purchaser

or Seller. In such event, this Agreement shall constitute a "reservation," not a binding contract, and Seller shall have no obligation to sell and Purchaser shall have no obligation to buy the Property. A reservation agreement cannot become a binding sales agreement unless and until a Final Public R[e]port is issued on the Project, the Purchaser has receipted or is deemed to have receipted therefor, and the Seller and Purchaser execute a separate confirmation letter in which they agree to render this Agreement a binding contract. A RESERVATION MAY BE TERMINATED AT ANY TIME BEFORE IT IS RENDERED A BINDING CONTRACT, WITH OR WITHOUT CAUSE, AT THE OPTION OF EITHER PARTY, BY WRITTEN NOTICE OF SUCH TERMINATION TO THE OTHER PARTY. In the event of such termination, the Seller shall cause Escrow to refund all payments previously made by Purchaser without interest, and neither party shall have any other or further liability hereunder or with respect to the Project; provided that if Purchaser terminates this reservation, then Escrow shall deduct from the refund to Purchaser the escrow cancellation fee and all costs incurred by Seller, Escrow, or any lending institution in processing this Agreement or the loan application; if Seller terminates this reservation, then Seller shall pay such fees and costs.

The Hawaii Real Estate Commission did not issue its Final Horizontal Regime Public Report on the project until February 27, 1981, more than one year after the issuance of the Preliminary Report.

On March 27, 1981, the developer sent the appellees a letter which read as follows:

Dear Kalapaki Buyer:

Aloha! The Final Public Report for the project has now been issued and a copy is enclosed. This letter is intended to serve both as the letter of transmittal for that report and receipt, and the confirmation letter called for in paragraph E.2.a. of your sales contract.

Please sign and date this letter in the spaces provided below, and also sign and date the enclosed receipt for the Final Public Report. You should then retain the last (gold) copy of the receipt and return the other three copies and this letter in the stamped, self-addressed envelope by April 10. This will confirm the mutual obligations of the parties, as enumerated in the sales contract.

We are pleased to inform you that the construction of the project

is well under way. Again. we would like to express our pleasure at having you as a member of the Kalapaki family.

Mahalo and Aloha.

KALAPAKI ASSOCIATES

On April 19 and 28. 1981. respectively, appellees Nakamura and Kaminaka signed the confirmation letter confirming the condominium reservation agreement, deposit, receipt and sales agreement and signed the receipt for the final public report.

On December 17. 1981, third-party defendant Carlsmith & Dwyer sent appellant the following letter at the request of the developer:

Mr. Alan A. Conboy asked us to prepare this letter. [Assuming] that purchasers have signed receipts for the Preliminary and Final Public Reports and a confirmation letter agreeing to render the reservation and sales agreements a binding contract. and assuming that the sales were conducted in accordance with our suggested sales procedures and all applicable laws and that no subsequent events occur which would give purchasers the right to [rescind], the sales contracts for Kalapaki Villas Condominium Project have "become effective" and the requirements of Section 514A-39. 514A-64. and 514A-66" of the Hawaii Revised Statutes have been met as set phrases are used in Section 514A-65. Hawaii Revised Statutes.

If you have any questions or comments, please feel free to call. It is my pleasure to remain. . . .

On January 8. 1982. appellant received a letter from the developer requesting it to release the buyers' deposits. Appellant then disbursed $471.504 representing the deposits of the purchasers including the appellees in this case.

HRS §§ 514A-65 (1977) and 514A-66 (1978) provide as follows:

[514A-65] Escrow requirement. All moneys paid by purchasers prior to issuance of final reports shall be deposited in trust under escrow arrangement with instructions that no disbursements shall be made from such trust funds on behalf of the seller until the contract has become effective, and the requirements of sections 514A-39, 514A-63, 514-64. and 514A-66 have been met.

514A-66 One year limit. If the final public report is not issued within one year from the date of issuance of the preliminary report. each purchaser shall have a right to a refund of all moneys paid by him; provided that if the final public report is issued after the one-year period and a copy of the final report is delivered to the

purchaser either personally or by registered or certified mail with return receipt requested and at the same time the purchaser is notified in writing of his right of refund and cancellation of obligation and the waiver of such right upon his failure to act within a thirty-day period, the purchaser shall have thirty days from the date of delivery of the final report to exercise his right of refund and cancellation of obligation, after which period such right shall be deemed waived.

According to the appellees' affidavits in the file in the court below, they made demand for the return of their deposits on the defendants. This allegation was not contested by affidavits to the contrary from appellant.

The court below granted summary judgment to the appellees and denied summary judgment to the appellant.

Appellant contends that it cannot be held liable to the appellees in this case because it obtained an opinion letter as provided in paragraph 7 of the escrow agreement. Appellant also contends that the appellees, by signing the confirmation letter and the receipt for the final public report, waived the provisions of HRS §§ 514A-65 and -66. Neither of these contentions has merit.

HRS § 514A-65 requires that the escrow arrangement contain instructions that no disbursements will be made until a contract has become effective and the requirements of § 514A-66 (among others) have been met. Paragraph 20 of the escrow agreement subordinates the other provisions of that agreement to the provisions of Chapter 514A. The provisions of paragraph 7 of the escrow agreement, to the extent that they are in conflict with the provisions of Chapter 514A, are without effect.

Since the final report was issued more than one year after the preliminary report, appellant, under the statute, had no right to disburse the funds in question until the provisions of HRS § 514A-66 had been complied with. That section provided that when the final public report is not issued within one year from the date of the preliminary report, each purchaser has a right to the refund of all moneys paid by him unless the purchaser is notified in writing of his right to a refund and cancellation, but that the right to a refund will be waived if not acted upon by the purchaser within a 30-day period after such notice has been received.

It is undisputed that the appellees received no such notice either in the so-called confirmation letter or otherwise. Their signing an accep-

tance of the confirmation letter and a receipt for the final report did not waive their right to the notice required under HRS § 514A-66, and they therefore had a right to the refund of the moneys paid. The judgment is affirmed.

*Sidney K. Ayabe* and *Albert W. Evensen* (*Paul T. Yamamura* with *Sidney Ayabe* on the briefs; *Libkuman, Ventura, Ayabe & Hughes* of counsel) for appellant.

*Leslie C. Togioka* for appellees.